OPINION
Appellants, William and Janice Lyons, appeal the sua sponte
decision of the Preble County Common Pleas Court, Juvenile Division, granting legal custody of their delinquent son, John Lyons, to Michelle Martin.
Appellants are John's adoptive parents. Martin is John's biological mother (a legal stranger to the child). Appellants adopted John at an early age and began experiencing difficulty with John's unruly behavior when John was approximately twelve years old. Appellants filed a complaint against John in the juvenile court, and on July 27, 1997, John was adjudged unruly. The court granted custody of John to Preble County Children's Services Bureau ("PCCSB"). Appellants filed several subsequent complaints against John. As a result, throughout the course of 1997 and 1998, John was subject to a number of different case plans, probation requirements, and rehabilitative counseling programs.
On July 14, 1998, the juvenile court adjudged John a delinquent child under R.C. 2151.02 for aggravated trafficking in drugs. Testimony at the July 14, 1998 hearing established that after John was adopted, John's biological mother, Martin, continued to play a significant role in his life. Martin contributed to John's tuition, gave him gifts, and purchased clothing for him. In fact, at one point during the previous year, appellants called Martin and requested that she come to Ohio and take John back to North Carolina to stay with her. Testimony also established that John was doing very well in North Carolina and that his grades had improved significantly while he was there.
All parties, including appellants and Martin, were present at the July 14, 1998 hearing and were given the opportunity to be heard. At the hearing, the juvenile court ordered that John's legal custody would remain with PCCSB, physical custody was granted to Martin in North Carolina. Appellants were granted visitation. Appellants voiced no objection to the court's dispositional order at that time. In fact, the record indicates that appellants acquiesced in granting physical custody to Martin because they believed it was in John's best interest.
In its October 23, 1998 decision, the juvenile court, on its own motion, ordered that legal custody with PCCSB be terminated and transferred to Martin "subject to further orders." On November 2, 1998, the trial court ordered appellants to pay child support which was forwarded through the juvenile court to Martin for John's support. On November 20, 1998, appellants filed a timely notice of appeal from the juvenile court's October 23, 1998 decision.
On appeal, appellants raise the following sole assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS WHEN IT GRANTED LEGAL CUSTODY OF THEIR MINOR SON TO A LEGAL STRANGER WITHOUT BENEFIT OF ANY TESTIMONY OR ANY EVIDENCE.
In this assignment of error, appellants appear to be raising two separate issues for review. First, appellants argue that the trial court had no authority to grant custody of John to Martin. Second, appellants assert that their due process rights were violated when the court modified its former custody order without the benefit of a hearing.
R.C. 2151.35.5 enumerates several options for the trial court's disposition regarding a delinquent child. In addition to the options which are specifically enumerated, the statute contains a catchall provision. The catchall provision vests the court with wide discretion to "[m]ake any further disposition that the court finds proper * * *." R.C. 2151.35.5(A)(12).[1]
In In re Caldwell (1996), 76 Ohio St.3d 156, the Ohio Supreme Court construed the scope of the juvenile court's discretion under the catchall provision. There, the court stated "[o]bviously the General Assembly by adding the word any, which it was not required to do, gave the trial judge discretion to further implement the rehabilitative disposition of a juvenile under R.C. 2151.355." (Emphasis sic.) Id. at 159, quoting In re Samkas
(1992), 80 Ohio App.3d 240. The catchall provision gives the trial judge "discretion to take `any' steps the judge believes necessary to fully and completely implement the rehabilitative disposition of a juvenile under R.C. 2151.355." Id., citing In re Bremmer (Apr. 1, 1993), Cuyahoga App. No. 62088, unreported. The juvenile court is awarded wide latitude because it is the trial judge who has the "opportunity to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved. The statute authorized the court to issue orders of disposition appropriate to each child." Caldwell at 160-61.
It is evident that the catchall provision empowers the juvenile court with broad discretion to tailor its dispositional order to the specific needs of a particular juvenile in a specific set of circumstances. See In re Gordon (Feb. 14, 1996), Summit App. No. 17364, unreported. Absent an abuse of the court's discretion, the reviewing court will not reverse the judgment of the juvenile court. Id. An abuse of discretion connotes an attitude on the part of the juvenile court that is "unreasonable, arbitrary, or unconscionable." Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,87.
Applying these principles to the case before us, we find that the juvenile court, under the broad authority to make any further disposition that the court finds proper, was authorized to grant custody of John to Martin, his biological mother. Therefore, we find that appellants' first issue for review lacks merit.
Second, appellants argue that they were denied due process of law by the trial court's decision to forego a hearing before issuing its October 23, 1998 entry granting legal custody of John to Martin.
Generally, due process of law under the United States Constitution and "due course of law" under Article I, Section 16 of the Ohio Constitution require notice, a fair opportunity to be heard, and the right to produce testimony, including the right to cross-examine witnesses. See Cicerella v. Jerusalem Bd. of Zoning Appeals (1978),59 Ohio App.2d 31.[2] Due process demands that decisions not be based upon evidentiary facts secretly collected and not disclosed to persons adversely affected by the decision. Id. at 38.
Our review of Ohio law reveals that cases addressing due process rights within a juvenile delinquency context concern the due process rights of the delinquent child, whereas this case involves the due process rights of the child's adoptive parents. As such, there is little case law directly on point. Despite this fact, those cases involving due process rights of the delinquent child do shed some light on the court's application of due process within a juvenile delinquency context. The Sixth District Court of Appeals has stated that "while a juvenile court must observe some due process requirements * * * wide latitude is given to the juvenile court in conducting its proceedings." In re Ravanna T.
(Aug. 1, 1997), Lucas App. No. L-96-371, unreported, citing In reGault (1967), 387 U.S. 1, 27, 87 S.Ct. 1428. The court in RavannaT. stated that the juvenile court will not be reversed unless it is found to have abused its discretion. Id. See, also, In reKelly (Mar. 4, 1999), Franklin App. No. 98AP-588, unreported.
As discussed in appellant's first issue for review, the juvenile court is afforded broad discretion in formulating its dispositional orders. Similarly, cases indicate that the court is also afforded broad discretion when fashioning procedures to fit each particular case, so long as those procedures are within the scope of R.C.2151.01.[3]
In this court's estimation, the decision of the juvenile court to transfer legal custody to Martin without the benefit of a hearing may not have been the best choice among all choices available to the court. However, in light of the facts of thiscase, we cannot say that appellants' due process rights were violated by the court's action.
On July 14, 1998, with all parties present, the trial court awarded physical custody to Martin, legal custody remained with PCCSB, and visitation rights were granted to appellants. Appellants voiced no objection to this arrangement though they were given a full and fair opportunity to do so. The court's October 23, 1998 entry, which appellants have appealed, merely transferred legal custody from PCCSB to Martin. Therefore, the court's October 23, 1998 action did not divest appellants of any right or privilege which they had prior to October 23, 1998. As such, appellants' claim that their due process rights were violated lacks merit.
As previously stated, in light of the specific facts of this case, and the broad discretion afforded the juvenile court in adopting procedures in delinquency proceedings, we find that appellants' due process rights were not violated by the trial court's sua sponte entry transferring legal custody from PCCSB to Martin. Appellants' second issue for review lacks merit.
Appellants' assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and YOUNG, J., concur.
[1] We note that R.C. 2151.35.5 was amended as of January 1, 1999, and the catchall provision is now found in R.C.2151.35.5(A)(22).
[2] In Ohio, "due course of law" as it appears in the Ohio Constitution is equivalent to "due process of law" as it appears in the United States Constitution. In re Pollak (C.P. 1962), 89 Ohio Law Abs. 112.
[3] R.C. 2151.01 provides that the section "shall be liberally interpreted and construed so as to * * * provide judicial procedures through which Chapter 2151.01 of the Revised Code is executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced." R.C. 2151.01(D).